## GRISMORE *v.* UTLEY.

### Opinion delivered June 18, 1923.

1.  VENDOR AND PURCHASER—FRAUDULENT REPRESENTATION.—Where a vendor or his agent makes a representation of a fact which has nothing to do with opinion and is peculiarly within the knowledge of the person making it, the purchaser, receiving it has a right to rely upon its truthfulness, though the means of ascertaining its falsity were fully open to him, as it does not lie in the mouth of the declarant to say that it was folly in the purchaser to believe him.

2.  VENDOR AND PURCHASER—FRAUD—BURDEN OF PROOF.—A purchaser has the burden of showing that his purchase was induced by false representations.

3.  VENDOR AND PURCHASER—FRAUDULENT REPRESENTATION—MATERIALITY.—In a sale of land for $8,000, a misrepresentation that the land was not in a drainage district was material if the land was in a drainage district, and subject to a liability therein of more than $2,000.

Appeal from Poinsett Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

#### STATEMENT OF FACTS.

Appellants brought this suit in equity against appellees to foreclose a deed of trust given for the purchase price of 160 acres of land in Cross County, Ark.

Appellees filed a cross-complaint, asking for a rescission of the contract for the purchase of the land, on the ground that it was procured by false representations, and also asked to recover a portion of the purchase price of the land which they had already paid.

G. T. Carey and V. T. Utley entered into a contract with W. L. Brennan, the woods superintendent of the

Grismore-Hyman Company, to purchase from that company 160 acres of land for the sum of $8,000. Carey and Utley were witnesses for themselves. According to their testimony, they purchased the land described in the complaint for $8,000, paying $2,000 in cash on January 10, 1920, and giving their notes for the balance of the purchase price, and a deed of trust on the land in question to secure the payment thereof. The negotiations and the contract were made with W. L. Brennan. They asked Brennan whether or not the land was in a drainage district, and Brennan told them that it was not. They told Brennan that they owned a piece of land in another county which was in a drainage district and that they "had their stomachs full of drainage district." They said they would not buy the land at all if it was in a drainage district. Brennan assured them that he had an abstract and had examined it, and knew that the land was not in a drainage district. Carey had known Brennan for five or six years, and relied on his statements. They subsequently learned that the land was in a drainage district, and that the assessment of betterments against it amounted to $4,800, and the estimated amount which would have to be paid for the construction of the ditch, and which was a charge against the land, amounted to $2,087.04.

W. L. Brennan was a witness for appellant. He admitted making the contract for them, but denied having told Dr. Utley and Mr. Carey that the land was not in a drainage district. On the other hand, he told them that there had been a survey for a drainage ditch about a half of a mile west of the land, but that, in his opinion, the land was drained by a slough on each side of it, and that he could not see why it would be assessed for the construction of a drainage ditch. Fred Grismore testified that Dr. Utley and Mr. Carey both asked him for an extension of time on the first note given for the purchase price of the land when it fell due. He gave them the extension of time, and never heard them charge that

Brennan had made any false representations about the drainage ditch until some time in the fall of 1921, a short time before the present suit was brought. He stated that the parties became dissatisfied with their purchase because the value of the land depreciated 50 per cent. after they had entered into the contract in question.

The cashier for the Grismore-Hyman Company also testified that he notified Dr. Utley and Mr. Carey that the first land note was due, and they told him that they would take it up a little later on.

The chancellor found the issues in favor of appellees, and entered a decree canceling the contract for the sale of the land and rendering judgment in favor of appellees against appellants for $2,380, the sum that they had already paid towards the purchase price of the land. The case is here on appeal.

Appellant *pro se.*

There can be no fraud without intention to deceive, though the motive is immaterial. Kerr on Fraud, 3. 7. Where means and sources of knowledge are equally open to each, one party has no right to place reliance upon the statements of the others. 11 Ark. 58; 26 Ark. 28; 31 Ark. 170; 46 Ark. 245; 46 Ark. 337; 47 Ark. 148. To justify a rescission of the contract on the allegation of fraud, the proof must be clear and satisfactory. 11 Ark. 378; 23 Ark. 176. To avoid a contract, the misrepresentations must be knowingly and fraudulently made concerning some material fact, otherwise it affords no ground for rescission. 125 U. S. 247; 19 Ark. 522; 31 Ark. 170; 46 Ark. 337; 82 Ark. 20; Pomeroy, § 878. The representation that the property was not in a drainage district is not the kind of a representation that would justify a rescission of the contract, because the theory of the right to construct a drainage ditch is based upon special benefits accruing to the particular lands. 9 R. C. L. 6534. Note 26, L. R. A. (N. S.) 975.

*Gaulney & Dudley,* for appellees.

Appellees were induced to buy the lands by the false and fraudulent representation that they were not situated in a drainage district, and had the right to have that contract rescinded and their notes for purchase money canceled. *Yeates* v. *Pryor,* 11 Ark. 66. Appellees had the right to and did rely upon the fraudulent statements. 47 Ark. 164. Brennan, the joint owner of the lands, assured the appellees, when they inquired if the lands were in a drainage district and stated they would not purchase lands included in a drainage district, that they were not situated in any such district, and appellees were induced to purchase on this false and fraudulent representation. The means of information as to the particular fact about the lands was not the same, and appellants should have known it, and are bound by the representations. 71 Ark. 91; 142 Ark. 189; 112 Ark. 489; 101 Ark. 95. Appellees even proposed that if appellants would pay the estimated amount of drainage taxes against the lands they would carry out the contract of purchase, but this they refused to do.

HART, J., (after stating the facts). The chancellor found that W. L. Brennan, the duly authorized agent of the Grismore-Hyman Company, falsely represented to appellees that the land in question was not in a drainage district, and that this false representation was a material inducement to appellees in making the contract for the purchase of the land.

It is first contended that appellees should be denied relief because they did not examine the records to see whether or not the land purchased by them was in a drainage district. It would be inequitable to say to one who, in good faith, has relied upon the express declaration of another that the land he owned was not in a drainage district, that he might have learned its falsity by going to the county seat and examining the records. The obligation of ordinary good faith precludes the vendor from seeking shelter under such a claim. The ven-

dor is in no position to assert that, because the record of drainage districts was open to inspection, the representations were immaterial. It is enough that the purchaser believed the statement, that inquiry was necessary to discover the truth, and that he executed the contract on the strength of the representation.

As said in *Gammill* v. *Johnson,* 47 Ark. 335, "when the representation is made of a fact that has nothing to do with opinion, and is peculiarly within the knowledge of the person making it, the one receiving it has the absolute right to rely upon its truthfulness, though the means of ascertaining its falsity were fully open to him. It does not lie in the mouth of the declarant to say it was folly in the other party to believe him." To the same effect see *Evatt* v. *Hudson,* 97 Ark. 265, and *Bennett* v. *Farabough,* 154 Ark. 193.

In the latter case the court recognized that a false representation that the land was not in a drainage district would be a ground for the rescission of the contract for the sale of the land, but denied the purchaser relief on the ground that the testimony did not warrant it.

In the case at bar it is not denied that Brennan was the duly authorized agent for the sale of the land and had the authority to make the representation that the land was not in a drainage district, if in fact he did make such representation. Appellants contend, however, that Brennan made no such representation, and this presented a question of fact for the chancery court. The burden was upon the appellees to show that they were induced to purchase the land by false and fraudulent representations of appellants or their agent. *Grayling Lumber Co.* v. *Ebbitt,* 134 Ark. 175, and *English* v. *North,* 112 Ark. 489.

To sustain the burden, Mr. Carey and Dr. Utley both testified in positive terms that they did not wish to purchase any land in a drainage district, and expressly told Brennan that their experience was such that they

would not, under any consideration, purchase land in a drainage district. Brennan assured them that he had examined the abstract and knew that the land was not in a drainage district. It turned out that the land was in a drainage district, and that the assessment of benefits amounted to over $4,000, and it was estimated that it would take about one-half of this to construct the drainage ditch.

This was a material matter to be considered in the purchase price of a tract of land sold for $8,000. It was the assertion of a positive fact by Brennan, and appellees were justified in relying upon it. It is true that Brennan denied having made the representation, and that he is corroborated to some extent by Grismore and by the cashier, who both testified that Carey and Utley had come to them separately and asked for an extension of the time of payment of the first land note, on account of the financial depression which had spread over the country since the contract for the purchase of the land.

The chancellor believed the testimony of appellees on this point, and his finding is warranted by their testimony. Therefore the decree will be affirmed.