## No. 15,255.

### UNITED STATES NATIONAL BANK OF DENVER, TRUSTEE ET AL. *v.* BRUNTON.
(150 P. [2d] 297)

Decided June 12, 1944.

Mr. MAX D. MELVILLE, NORMA L. COMSTOCK, Messrs. DINES, DINES & HOLME, Mr. MILTON J. KEEGAN, for plaintiffs in error.

Mr. MAX P. ZALL, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case involves the construction of a trust agreement, dated August 29, 1927, executed by Katherine K. Brunton, as donor, and the United States National Bank of Denver, as trustee. The trustee proceeded to disburse the residue of the income in accordance with article V of said instrument which, beginning with paragraph 2 thereof, is as follows:

"2. During the life of David W. Brunton, husband of the donor, fifty per cent (50%) of the net income arising from the trust estate shall be paid by the trustee to the said David W. Brunton.

"3. After the death of David W. Brunton, and during the natural life of the donor, fifty per cent (50%) of the net income arising from the trust estate shall be paid unto the donor.

"4. In the event that the donor does not survive said David W. Brunton, and if she survives him, then from and after her subsequent death, the income to which she would have been entitled, if living, shall be paid by the trustee to the lines of Frederic K. Brunton, John D. Brunton, Harold J. Brunton, and Marion Brunton Barker [the four children of David W. and Katherine K. Brunton], respectively, share and share alike, or the survivors or survivor thereof.

"5. (a) During the natural life of the said Frederic K. Brunton thirteen and eight-tenths per cent (13.8%) of the net income arising from the trust estate shall be paid by the trustee to the said Frederic K. Brunton * * * [the rest of 5 (a) and all of 5 (b) contain provisions in respect to the disposition of the income allocated to Frederic K. Brunton and correspond to the provisions hereinafter set forth in the allocation of income to Harold J. Brunton in 7 (a) and 7 (b)].

"6. During the natural life of the said John D. Brunton nine and one-half per cent (9.5%) of the net income

arising from the trust estate shall be paid by the trustee to the said John D. Brunton. [Then follows a provision in respect to this income corresponding to the provision in respect to the income allocated to Marion Brunton Barker hereinafter set forth in paragraph 8.]

"7. [This paragraph 7 is the one particularly involved in this case.]

"(a) During the natural life of the said Harold J. Brunton thirteen and seven-tenths per cent (13.7%) of the net income arising from the trust estate shall be paid by the trustee to the said Harold J. Brunton, but, during the life of the donor, only upon her written order and under her uncontrolled discretion. Should the said Harold J. Brunton predecease his mother, any accumulation of his share of the income shall at his death be paid as follows: one-half (½) thereof unto his widow, and all of the remaining income (including his widow's share thereof in the event that he is not survived by a widow or in the event that if survived by a widow such widow's rights to such income have been terminated under the provisions of Section VII hereof) unto his lawful issue, per stirpes and not per capita, or, if there be no such issue then living, then unto the lines of Frederic K. Brunton, John D. Brunton and Marion Brunton Barker, respectively, share and share alike, or to the survivors or survivor thereof.

"(b) From and after the death of the said Harold J. Brunton, the income to which he would have been entitled if living shall be paid as follows: One-half (½) unto his widow during her lifetime, and all of the remaining income (including his widow's share of the income in the event that he is not survived by a widow, or in the event that if survived by a widow such widow's rights to such income have been terminated under the provisions of Section VII hereof) unto his lawful issue, per stirpes and not per capita. If upon the death of the said Harold J. Brunton there shall be no such lawful issue living, or if living extinction thereof

should occur prior to the termination of this trust, such income of said Harold J. Brunton shall be paid to the lines of Frederic K. Brunton, John D. Brunton, and Marion Brunton Barker, respectively, share and share alike, or to the survivors or survivor thereof.

"8. During the natural life of the said Marion Brunton Barker thirteen per cent (13%) of the net income arising from the trust estate shall be paid by the trustee to the said Marion Brunton Barker. From and after the death of the said Marion Brunton Barker the income to which she would have been entitled if living shall be paid as follows: One-half ($\frac{1}{2}$) to her husband, and all of the remaining income (including her husband's share thereof in the event that she is not survived by a husband, or in the event that if survived by a husband such husband's rights to such income have been terminated under the provisions of Section VII hereof) unto her lawful issue, per stirpes and not per capita; or if there be no such issue then living, then to the lines of Frederic K. Brunton, John D. Brunton and Harold J. Brunton, respectively, share and share alike, or to the survivors or survivor thereof."

David Brunton, husband of donor, and Katherine K. Brunton, donor, died four and five months respectively after the creation of the trust. The trust had, therefore, been performed and executed in respect to paragraphs 2 and 3 of article V. Thereafter the question arose as to whether payments under paragraph 4 should be made exclusively to the four children who survived, or whether grandchildren then in being should immediately take under the definition of "lines." Article IV of the trust agreement contained a definition of family lines, i.e.: "The line of Harold J. Brunton, son of the donor, shall consist of and shall include the said Harold J. Brunton and his lawful *issue* of every degree. * * * ." It concluded with the sentence, "The lawful issue of every degree of each line shall take, as to both income and principal, per stirpes and not per capita." We held in

*Brunton v. International Trust Co.,* 90 Colo. 48, 6 P. (2d) 460, that under the foregoing facts the progeny cannot share concurrently with the progenitor. Accordingly, the trustee thereafter paid all of the income due the line of Harold J. Brunton solely to Harold J. Brunton, and acted similarly in respect to the lines of the other three children of David and Katherine Brunton.

Harold J. Brunton was thus receiving one-fourth of the fifty per cent of the income under paragraph 4, or twelve and one-half per cent, and the thirteen and seven-tenths per cent awarded him under paragraph 7 (a), or a total of twenty-six and two-tenths per cent of the income. He died on November 29, 1941, leaving surviving him a widow, Jessie T. Brunton, who was his second wife. Two children born of his first wife, from whom he was subsequently divorced, Barbara Brunton Jacques and David William Brunton II, also survived him.

After his death the trustee began paying the thirteen and seven-tenths per cent of the income which he had been receiving during his lifetime under 7 (a) as follows: one-half to his widow, Jessie T. Brunton and the remaining one-half to his two above-mentioned children in accordance with 7 (b). On the other hand, the twelve and one-half per cent of the income which he had been receiving under paragraph 4 during his lifetime, the trustee began disbursing to his two children in equal shares. His widow, Jessie T. Brunton, thereupon demanded that the trustee pay her one-half of the twelve and one-half per cent income which he had been receiving under paragraph 4, and upon the trustee's refusal, she brought this suit against the trustee praying that it be required to pay her, in addition to the payments already made, one-half of the twelve and one-half per cent of the income of said trust from the time of the death of said Harold J. Brunton, and continue to make such payments during her lifetime. She further asked for a decree interpreting the trust agreement in accordance with her contentions, and in the event that it could not be so

interpreted by the court, prayed that it be reformed, amended and corrected so that paragraph 4 should read as follows: "In the event that the donor does not survive said David W. Brunton, and if she survives him, then from and after her subsequent death, the income to which she would have been entitled, if living, shall be paid by the trustee to Frederic K. Brunton, John D. Brunton, Harold J. Brunton and Marion Brunton Barker, respectively, share and share alike, and upon the death of them, or any of them, shall be paid by the trustee as hereinafter set forth."

The trial court entered a decree in accordance with the contentions of the plaintiff and found no need for reforming, amending and correcting the trust agreement. The two children of Harold J. Brunton, adversely affected by this decree, come here by writ of error and are joined by the trustee. The latter states that, although having no interest as a beneficiary in the outcome of this litigation and being in the nature of a stakeholder only, nevertheless, believing that the trial court improperly construed the instrument and the obligations thereunder, it feels compelled to join with the two other plaintiffs in error in urging a reversal of the trial court's decree.

Counsel for Jessie T. Brunton does not claim that she, as widow of Harold J. Brunton, is a member of the "line" of Harold J. Brunton under paragraph 4. His contention is that the clause in 7 (b) reading, "From and after the death of the said Harold J. Brunton, the income to which he would have been entitled if living shall be paid as follows: one-half unto his widow during her lifetime, and all of the remaining income * * * unto his lawful issue, per stirpes and not per capita." applies not only to the income which Harold J. Brunton was entitled to receive under paragraph 7, but also to the twelve and one-half per cent income which Harold J. Brunton was entitled to receive under paragraph 4. Counsel for the trustee con-

tend this provision is limited to the income disposed of in paragraph 7.

Counsel for both sides refer to the general principles applicable in the interpretation of instruments, and discuss the case of *Bacon v. Nichols,* 47 Colo. 31, 105 Pac. 1082. Counsel for Jessie T. Brunton refers to the rule that the later clause in an instrument supersedes the earlier in the event of a conflict or doubt between the two. We believe, however, that the principle that governs the decision in this case is that referred to in *Bacon v. Nichols, supra,* where we quote from *Roseboom v. Roseboom,* 81 N.Y. 356: "We thus follow the rule which requires a will to be so construed as to avoid, if possible, all repugnancy and give effect to all its language. We have here no occasion to depart from it; the two clauses are not irreconcilable, and there is no occasion, therefore, to reject one in order to uphold the other—a desperate remedy, and to be resorted to only in case of necessity."

■ It is our opinion that in article V, paragraphs 2, 3 and 4 make complete disposition of fifty per cent of the income of the trust; that paragraph 5 makes complete disposition of thirteen and eight-tenths per cent of the income; that paragraph 6 makes complete disposition of nine and five-tenths per cent of the income; that paragraph 7 makes complete disposition of thirteen and seven-tenths per cent of the income; that paragraph 8 makes complete disposition of thirteen per cent of the income. Thus, these paragraphs together dispose of the total income. It is also our opinion that paragraphs 2, 3 and 4 refer exclusively to the first fifty per cent of the income of the trust; that paragraph 5 refers exclusively to thirteen and eight-tenths per cent; paragraph 6 to nine and five-tenths per cent; paragraph 7 to thirteen and seven-tenths per cent; and paragraph 8 to thirteen per cent; that paragraphs 2, 3 and 4 are complete in themselves so far as disposing of one-half of the income of the trust is concerned and need no further explanation, reference or cross-reference for a disposi-

tion of same; that each of paragraphs 5, 6, 7 and 8 are complete in themselves and dispose of the respective percentages of income from the beginning of the trust to the termination thereof; that under this interpretation the provisions in regard to the distribution of income are harmonious and unambiguous, and no conflict arises between one provision and another.

We believe that the interpretation placed upon the instrument by the trial court in accordance with plaintiff's contention creates a conflict or repugnancy between paragraph 7 (b) and paragraph 4; that the effect of the holding is to provide a life estate for Harold J. Brunton in one-fourth of the income under paragraph 4, and to wipe out the word "lines." The effect of plaintiff's interpretation is to change the words, "line of Harold J. Brunton" into merely "Harold J. Brunton." In other words, to treat him as if he were the end of the line. The effect of our decision in *Brunton v. International Trust Co., supra,* is that Harold J. Brunton was simply the beginning of the line, and that he took to the exclusion of his progeny, but that his children took immediately upon his death and that they in turn would take to the exclusion of their children because of the per stirpes and not per capita provision. We did not hold that the progeny of Harold J. Brunton were cut off upon his death, but rather that they came into the enjoyment of the income upon his death. In that case the point was that it was *only* upon his death; in this case it is necessary to emphasize that they *did* become entitled *upon* his death.

The continuance of the trust was during the lives of twelve persons and twenty-one years after the death of the last survivor. These persons consisted of the donor and her husband, her four children, and six grandchildren (two of the latter of whom are parties in this case). Six of the twelve lives were in the youngest of the three generations represented. It is evident that the donor contemplated the possibility of the trust existing

for a considerable period of time, and that the expression "lines of," when used in connection with her four children, would in all probability include a number of generations succeeding that of her own children. Article IV is given over to the definition of the "line" of each of her four children, and we cannot ignore the disposition made in paragraph 4, article V, of fifty per cent of the income to the "lines" of those four children after the death of donor and her husband. We are asked to limit it sharply, if not ignore it, by virtue of a clause in 7 (b), when the latter clause can be given full meaning and effect by applying it to the particular income which is the subject matter of both paragraphs 7 (a) and 7 (b). We cannot say this latter construction and disposition is unnatural or unusual. One part of the trust then satisfies the instinct to protect solely those related by blood —the family "line"—the other part making provision also for those who, coming into the family by marriage, survive their spouses.

If plaintiff's contention is correct and the provision in 7 (b) is to be taken as a cross-reference and apply to the income to which Harold J. Brunton was entitled under paragraph 4, as well as under paragraph 7 (b), then consistently the same construction should be applied as to the widow, if any, of Frederic K. Brunton under paragraph 5 (b), and to the widow, if any, of John D. Brunton under paragraph 6, and to any possible widower of Marion Brunton Barker under paragraph 8. It is to be noted that under paragraphs 5 and 7 the donor used the subdivisions (a) and (b), apparently for the reason that in the cases of her two sons, for whom provision is made in those paragraphs, she was retaining personal control over the disposition of the income provided for their respective benefits; whereas, in the case of her son and daughter mentioned in paragraphs 6 and 8 no such control is retained, with the result that those particular paragraphs are much shorter, and consequently in their construction it is not necessary to resort

to subsections (a) and (b). It may thus be more readily apparent that the subject matter of the whole of paragraph 6 is the nine and five-tenths per cent of the income referred to in the first sentence, and in paragraph 8 that the thirteen per cent of the income referred to in the first sentence is the subject matter thereof. The very structure or physical aspect of the instrument seems to us to militate against counsel's interpretation and in favor of that which we adopt.

During the course of the trial, plaintiff, over the objection of counsel for defendant, testified as to various conversations she had had with the donor, all of which occurred after the execution of the trust agreement. The testimony of other persons also was introduced over objection, as well as a copy of another trust agreement which donor had subsequently executed. It is our opinion that this evidence was improperly admitted.

For the reasons stated, we believe the trust agreement is complete and unambiguous, and that there is no need to go beyond its four corners to interpret it.

The judgment is reversed.