BARNETT *v.* MORRIS.

4-7426                                        182 S. W. 2d 765

Opinion delivered October 16, 1944.

*McKay & McKay* and *Ezra Garner,* for appellant.

*Wade Kitchens* and *J. E. Hawkins,* for appellee.

HOLT, J.  The primary purpose of appellees in this suit was to cancel a quitclaim deed.

October 26, 1922, J. A. Morris, as owner, by warranty deed, conveyed to his brother, R. J. Morris, "The west half of the southeast quarter of section eleven (11) township nineteene (19) S. range 21 west, containing in all eighty acres more or less.  It is understood and agreed that the seller retaines ½ of the minerals and mineral rights in and to said lands.  It is further agreed that the seller releases all wright in so far as to all lease contracts to the said lands."  This land was, at this time, subject to an oil and gas lease executed by J. A. Morris and wife to Columbia County Development Company. By mesne conveyances, Bert McMahen, October 27, 1933, acquired the land under the description contained in the deed from J. A. Morris to R. J. Morris, *supra.*

September 29, 1941, J. A. Morris and wife executed to H. C. Barnett, a quitclaim deed whereby they conveyed, for a consideration of $10, "the mineral interests which they reserved in deed from themselves to Robert J. Morris, dated October 26, 1922."  This quitclaim deed is the one in question here.  Following its execution, appellees brought this suit to cancel this deed, alleging fraud and misrepresentation on the part of H. C. Barnett in its procurement, and inadequacy of the purchase price.  It was further alleged that Barnett, immediately following the procurement of the quitclaim deed, conveyed a part of the interest, which he alleged he acquired under the deed,

to third parties. There was a prayer for cancellation of the quitclaim deed and an accounting in the event the third parties were found by the court to be innocent purchasers for value.

Bert McMahen intervened, asserted his claim to all surface rights and all mineral rights, except one-half of the non-participating royalty interest in and to all the oil, gas and other mineral royalties which might be produced and saved from the land. Appellants answered with a general denial, specifically denying all allegations of fraud, deceit, misrepresentation, and inadequacy of purchase price, denied that the quitclaim deed should be canceled, and "further requested that their title to an undivided one-half interest in and to all the oil, gas and other minerals should be quieted in" them.

On the issues presented, the trial court (and here we quote from the decree) "finds that October 26, 1922, J. A. Morris and Flossie Morris, were the owners in fee simple of the W ½ of SE ¼ section 11, township 19 south, range 21 west, Columbia county, Arkansas, and on same date conveyed said land to Robert J. Morris and reserved to themselves one-half of the minerals and mineral rights, but at same time released to the grantee the leasehold rights, that is, the right to lease the land for discovery and development of the minerals and mineral rights in said land without any right in grantors to participate in the purchase price of the lease. It appears and the court finds that by mesne conveyances the intervener Bert McMahen, became the owner of the surface rights, one-half of the minerals and mineral rights, and the leasehold rights in said 80 acres of land, and plaintiffs owned 40 acres of the mineral rights less the right to lease same, that is the mineral interest so reserved was subordinate and subject to such lease rights.

"The plaintiffs, September 29, 1941, were the owners in fee simple of an undivided one-half of the minerals and mineral rights in said land, less the right to lease said land and minerals for discovery and development, and plaintiffs herein claim only an undivided one-half of

the minerals and mineral rights in said land, subject and subordinate to the lease right of the intervener, Bert McMahen. September 29, 1941, the defendant, H. C. Barnett, for a grossly inadequate consideration and through fraud, obtained a quitclaim deed from plaintiffs to their minerals and mineral rights in said land, * * *. The defendant, H. C. Barnett, and wife, Mrs. H. C. Barnett (Effie Barnett), on same date conveyed by deed to defendant, S. J. McCollum, for $35 an undivided one-fourth interest in and to all the oil, gas, distillate, and other minerals in said 80 acres of land, it being the intention of said H. C. Barnett and wife to convey twenty so-called mineral acres, and said S. J. McCollum was an innocent purchaser, but the interest obtained by him was subject and subordinate to the right of the intervener, Bert McMahen, to lease said land for discovery and development of the minerals in said land. * * * The said H. C. Barnett and wife, October 6, 1941, deeded to defendant, Harry Spooner, herein found to be an innocent purchaser, for $100, an undivided one-sixteenth interest in and to all of the oil, gas, distillate, and other minerals in and under and that may be produced from the said 80 acres of land. The intention of the grantors being to convey five mineral acres, * * * but said deed was subject and subordinate to the right of the intervenor, Bert McMahen, to lease said land and minerals for the discovery and development of oil, gas or other minerals in the same.

"The said quitclaim deed from plaintiffs to defendant, H. C. Barnett, having been obtained by fraud and an inadequate consideration, the same should be and is hereby canceled, * * * The plaintiffs, their heirs and assigns, are the owners of fifteen acres of the minerals and mineral rights, the defendant, S. J. McCollum, and his assigns are the owners of twenty acres of the minerals and mineral rights, and Harry Spooner, his heirs and assigns, are the owners of five acres of the minerals and mineral rights in said land, but all such interests are subject and subordinate to the right of the intervener, Bert McMahen, to lease said minerals and land for discovery and development. * * * The twenty-five (25) acres of

minerals and mineral rights, less the lease right, conveyed by defendants, H. C. Barnett and wife, to S. J. McCollum and Harry Spooner, at the time were of the reasonable market value of $15 per acre, and such sales by defendants, H. C. Barnett and wife, Effie Barnett, defrauded and damaged plaintiffs, J. A. Morris and wife, in the sum of three hundred and seventy-five ($375) dollars.''

After allowing appellants credit for $10, the consideration stipulated in the quitclaim deed in question, the court awarded appellees $365 damages. From the decree comes this appeal.

Appellants relying upon the long established rule of this court that a written instrument may not be set aside on the grounds of fraud in its procurement, except by clear, satisfactory, cogent and convincing testimony, a mere preponderance thereof not being sufficient, argue that the testimony relied upon by appellees here falls short of the *quantum* of proof required, and relied strongly upon *Stephens* v. *Keener,* 199 Ark. 1051, 137 S. W. 2d 253.

The record reflects that in the forenoon of the day the quitclaim deed in question was executed by Morris and his wife, Barnett, who was in the abstract business, went to appellees' home and according to Morris' testimony, represented to him in effect that Bert McMahen's title to the land in question was ''messed up'' and that a quitclaim deed from appellees was necessary to clear the title so that it could be leased by Bert McMahen. He further testified that he and McMahen were good friends, that he did not wish to be contrary and was glad to help straighten out the title, that he, Morris, knew that he only had a royalty interest and that McMahen must first lease the land before he, Morris, would be paid anything on his royalty. ·Barnett returned to town, prepared the deed and returned to appellees' home in the afternoon with Mr. Barrow, a notary public. He further testified that he did not read the deed, that it was not read to him, did not know what it contained, that he was sick, suffering

from pellagra and other physical infirmities, including very weak eyes. He could not read without glasses and was very nervous and had transacted no business for ten years. Morris' wife and son tended to corroborate this testimony of Morris.

The evidence further disclosed that there was no grantee mentioned in the deed when Morris and his wife signed. The grantee's name was added later by appellant. Morris further testified that Barnett told him it was necessary that some consideration be paid in order to make the deed valid, that he accepted a check from Barnett for $10, which he later cashed, that he had no intention of conveying his royalty interest in the land.

The notary public testified that Mr. Morris and his wife stated to him, when they signed the deed, that they understood what they were signing and that the deed was read to appellees.

H. C. Barnett testified that he read the deed to appellees and that he was buying all the interest that they had in the property and that no fraud or deception was indulged in by him in procuring the deed.

There was ample testimony to support the court's finding that appellees' royalty was worth $15 per acre. Kenneth Maloch, Grady Maloch and Bert McMahen all so testified.

We do not attempt to set forth all the testimony. It suffices to say that after a careful review of the record, we have reached the conclusion that appellees have met the burden of proof imposed upon them and that the court's findings and decree on all issues were correct and should be affirmed.

While it is not shown that appellee, Morris, was mentally incompetent to execute the deed in question, we do think the evidence shows that he was in a very weak physical condition, the consideration paid to him was grossly inadequate, and that he was induced to execute the deed on the false and fraudulent representations of appellant, Barnett, that the deed was necessary to clear

the title of appellee's friend, McMahen. We think the gross inadequacy of the purchase price, coupled with appellee's physical weakness, misunderstanding of the purpose of the deed and imposition of appellant, sufficient to warrant the cancellation of the deed.

In *Luther* v. *Bonner*, 203 Ark. 848, 159 S. W. 2d 454, this court said: "Mere inadequacy of price, standing by itself and independent of other circumstances, is not sufficient to set aside a transaction. But inadequacy, accompanied by other circumstances (*e. g.*, weakness of understanding in the grantor or grantee; fraud, imposition, mutual mistake, or standing in a relation of influence) may readily make out a case of fraud; and it is said that if the inadequacy be so gross and manifest that it cannot be stated to a man of common sense without shocking the conscience and confounding the judgment, it suffices of itself (in the absence of adequate explanation) to prove that a fraudulent advantage was taken, as it shows that the person did not understand the bargain he made, or that he was so oppressed he was glad to make it, knowing its inadequacy."

And in *Grismore* v. *Utley*, 159 Ark. 479, 252 S. W. 16, Justice HART quoted with approval from *Gammill* v. *Johnson*, 47 Ark. 335, 1 S. W. 610: "When the representation is made of a fact that has nothing to do with opinion, and is peculiarly within the knowledge of the person making it, the one receiving it has the absolute right to rely upon its truthfulness, though the means of ascertaining its falsity were fully open to him. It does not lie in the mouth of the declarant to say it was folly in the other party to believe him."

We are also of the opinion that the court below properly construed the reservation in the warranty deed dated October 26, 1922, from J. A. Morris and wife to R. J. Morris. As has been indicated, the court found that Bert McMahen, successor in title to R. J. Morris, the grantee of J. A. Morris, acquired an undivided one-half interest in and to the oil, gas and other minerals together with the surface and leasehold rights, which, say appellants,

was in effect to hold that "McMahen owned all the land, and all the mineral rights except one-half of the ⅛ royalty interest in the minerals that might be produced therefrom and that Bert McMahen had the exclusive right to lease said lands and receive and collect all money paid for the ⅞ royalty and interest.".

While the reservation referred to is not as plain as it might have been in this regard, any ambiguity was removed by ample testimony disclosed in the record. In case of ambiguity, the rule is well established that testimony may be introduced to ascertain what the parties really intended by the language employed in the instrument. In *Swayne* v. *Vance, Executor, etc.*, 28 Ark. 282, this court held: "(Headnote) Where there is an ambiguity in the language of a deed, the court may resort to extraneous circumstances to ascertain what the parties really intended by the language employed; not for the purpose of changing the contract or agreement, but for the purpose of ascertaining what the parties referred to and intended at the time of making the writing."

Finding no error, the decree is in all things affirmed.

KNOX, J., not participating.