No. 15,442.

BRUNTON ET AL. *v.* INTERNATIONAL TRUST COMPANY, TRUSTEE ET AL.

(164 P. [2d] 472)

Decided November 5, 1945. Rehearing denied December 17, 1945.

Mr. MAX P. ZALL, Mr. MAX D. MELVILLE, NORMA L. COMSTOCK, Mr. NORMAN H. COMSTOCK, for plaintiffs in error.

Mr. MONTGOMERY DORSEY, Messrs. HUGHES & DORSEY, Mr. THOMAS KEELY, Messrs. DINES, DINES & HOLME, Mr. MILTON J. KEEGAN, Messrs. PERSHING, BOSWORTH, DICK & DAWSON, Mr. SAMUEL S. SHERMAN, JR., for defendants in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case involves the construction of two trust agreements, in one of which the International Trust Company is trustee, the United States National Bank ap-

pearing in the other in that capacity. Two distinct, and wholly unrelated questions, are involved and, except for the circumstances hereinafter noted, they might have been presented in separate cases, even as we have disposed of two other questions involving these trusts in separate proceedings. *Brunton v. International Trust Co.*, 90 Colo. 48, 6 P. (2d) 460, and *United States National Bank of Denver, Trustee v. Brunton*, 112 Colo. 442, 150 P. (2d) 297.

The first question presented to the trial court involves solely the trust in which the International Trust Company appears as trustee. The second point involves the right of Carville Joseph Brunton, adopted son of John D. Brunton, to take under either trust. Some of the parties and their counsel, who appear on opposite sides on one point, join in presenting one side of the argument on the other point.

Although David W. Brunton is the donor in the International Trust Company agreement, dated July 1, 1923, and Katharine K. Brunton is the donor in the United States National Bank agreement, dated August 29, 1927, it is conceded that it was the assets of the former that constituted the bulk of the corpus of both trusts as well as that of still another trust set up in New York City with the National Bank of Commerce of New York as trustee, under date of September 1, 1927 (which the Bruntons referred to as "Brunton Trust No. 2). The value of the original corpus of each of the three trusts exceeded $400,000.

The two Colorado trusts, very similar in their main outline, were created for a period to cover the lives of various members of the Brunton family and twenty-one years after the death of the last survivor thereof. Trust No. 1 (International) included the lives of the donor, David William, in the first generation, three of his four children (excluding John D.) in the second generation, and seven grandchildren in the third generation. Trust No. 3 (United States National) covered the lives of

Katharine K., the donor, and her husband, David William, in the first generation, all four of their children in the second generation, and six grandchildren in the third generation (one grandchild having died subsequent to the execution of Trust No. 1 and prior to the execution of Trust No. 3). All six members of the first two generations are now deceased.

The first point involved in the present proceeding arose when, after the death of Harold J. Brunton, who was one of the sons of David and Katharine, the International Trust Company, as trustee under Trust No. 1, alleging that there was a conflict as to the present disposition of the income which Harold J. Brunton had formerly been receiving during his lifetime, asked for an interpretation of the provisions of the trust agreement bearing on this question, the pertinent paragraphs of which read as follows:

"Article IV. Section 2 (a). During the natural life of Katharine K. Brunton, the wife of David William Brunton, forty per cent (40%) of the net income arising from the trust shall be paid by the trustee in the manner hereinbelow directed, to the said Katharine K. Brunton.

"(b). Upon the death of the said Katharine K. Brunton, the income to which she would have been entitled if living, shall be paid by the trustee to the lines of Frederic K. Brunton, John D. Brunton, Harold J. Brunton and Marion B. Shanklin, respectively, share and share alike, or the survivors or survivor thereof."

"Section 6 (b). Upon the death of the said Harold J. Brunton, the income to which he would have been entitled if living, shall be paid, one-half thereof to his widow, Lillian Brunton (if she and her husband have not separated during his lifetime), during her natural life, and the remaining one-half thereof *per stirpes,* to his lawful issue; or if there be no such issue then living, then to the lines of Frederic K. Brunton, John D. Brunton and Marion B. Shanklin, respectively, share

and share alike, or to the survivors or survivor thereof. After the death of the said Lillian Brunton, the share to which she would have been entitled if living, shall be paid *per stirpes* to the lawful issue of said Harold J. Brunton. If upon the death of said Harold J. Brunton there be no such lawful issue living or, if living, extinction thereof should occur prior to the termination of this trust, such income of the said Harold J. Brunton shall be paid to the lines of Frederic K. Brunton, John D. Brunton and Marion B. Shanklin, respectively, share and share alike, or to the survivors or survivor thereof."

The Lillian Brunton to whom reference is made in section 6 (b), supra, was, at the time of the execution of the trust agreement, the wife of Harold J. Brunton and the mother of all of his children. She subsequently was divorced from him, and both parties have since remarried. She now, as Lillian H. Glessner, disclaims any interest either in this proceeding or under any provisions of the trust. Jessie T. Brunton, Harold J. Brunton's second wife, now asserts the right to take the income as his surviving widow. Other beneficiaries under the trust, and particularly the children of Harold J. Brunton, contest this right.

The trial court found that: "As to the contention of Jessie T. Brunton, * * * she does not come within the provisions of the International Trust Company trust [known as 'The Brunton Trust'] so as to entitle her to receive during her lifetime one-half of the income which her husband, Harold J. Brunton, was entitled to receive during his lifetime, because, although his widow at the time of his death, the founders of the trust specifically designated Lillian Brunton, who, under the terms of the trust, cannot qualify and therefore said income the Court holds should, from the time of the death of Harold J. Brunton, go to the lawful issue of his line."

Jessie T. Brunton contends that as the *widow* of Harold J. Brunton she is entitled to one-half the income which he was receiving during his lifetime, and that

the words "Lillian Brunton" are mere surplusage. After a study of the trust agreement and the cases upon which her counsel rely, we have reached the conclusion that this contention is untenable.

Our impression is that, had the founders of the trust intended that *any* widow who survived Harold J. Brunton should take, they would have said so, as they did in Brunton Trust No. 3 (the United States National Trust) and not referred to any one person by name. The cases upon which counsel relies are of this character, including *Williams v. Fundingsland,* 74 Colo. 315, 221 Pac. 1084, 63 A.L.R. 77, where the beneficiary is designated, not by name, but by description or status. We have held in *Moore v. Hendley,* 97 Colo. 258 (p. 261), 48 P. (2d) 808, under the disclosed facts, that a substituted beneficiary named in two life insurance policies as "husband" was entitled to the proceeds thereof, as against the claim of the administrator of the estate of deceased insured, although he was not in fact her husband, the latter term being construed to be merely descriptio personae. We know of no case in this jurisdiction, and none elsewhere has been called to our attention, where the reverse situation has happened, i. e., an award made in favor of one suiting the status or description but who was a different person from that designated in the instrument being interpreted or construed. Nor do we believe that the fact that the word "widow" does not follow, but precedes, the name "Lillian Brunton," should change this interpretation or construction, for in the next succeeding sentence (section 6 [b]), are the words: "After the death of the said Lillian Brunton," further indicating that the gift is personal to her and not applicable to *any* widow. Another element indicating the personal nature of the gift is the parenthetical clause in the first sentence, immediately following the words "his widow, Lillian Brunton." The words within the parenthesis, "if she and her husband have not separated during his lifetime," clearly apply

to Lillian Brunton and her then husband, Harold J. Brunton (incidentally not to any subsequent husband), because if it applied to *any* widow, as such, the words within the parenthesis would appear not to make sense.

To treat the words "Lillian Brunton" as surplusage as counsel contend should be done, one also would have to delete the words contained in the parenthesis above quoted; and also the words "Lillian Brunton" in the second sentence of section 6 (b), leaving nothing for the word "said" to modify and no object for the preposition "of."

Construing the whole of section 6 (b), Article IV, we are of the opinion that there is a gift to Lillian Brunton of one-half of the income to which Harold J. Brunton would have been entitled under that paragraph were he living, but only if she survived him as his widow, i. e., "if she and her husband have not separated during his lifetime."

■ Counsel for Jessie T. Brunton urge that each paragraph must be read in the light of the whole instrument and that the intention of the founders must be ascertained from everything that appears within the four corners of the document. *Bacon v. Nichols,* 47 Colo. 31, 105 Pac. 1082. With this principle we are in agreement. Counsel then argues that consideration should be given to the dispositions made for the other wives of the founders.

Under section 2 (a), Article IV, forty per cent of the net income of the trust goes to Katharine K. Brunton, the wife of David W. Brunton. Counsel argues that the use of the word wife here should give a more generic character to the word widow in the paragraph relating to Lillian Brunton. We do not think so. The word "wife," describing Katharine K. Brunton, is proper because she takes her share of the income immediately upon the setting up of the trust, while she and her husband are still alive, in other words, while she is still the wife of David W. Brunton; whereas the only capacity

under which Lillian Brunton can take, under section 6 (b), is as the *widow* of Harold J. Brunton. But having reached that status, her income continues regardless of her remarrying.

A separate paragraph is set up under section 4 (a), Article IV, providing for Mrs. Frederic K. Brunton, wife of another son of Katharine and David, in the event she survives her husband. But her income stops in the event of her remarriage. No provision is made for the wife of John D. Brunton, another son of Katharine and David, nor is provision made for the husband of Marion Brunton, the only daughter of Katharine and David. From these other provisions nothing can be gleaned to indicate that the founders were intending to provide for every widow (or widower, as the case might be) of the members of the second generation. On the contrary, these very provisions made for the families of the other children argue for the interpretation the trial court has placed upon the clause wherein Lillian Brunton is named.

■ We are of the opinion then that the founders did not intend to make provision for any widow that Harold J. Brunton might leave, but merely to provide for Lillian Brunton, and then only if she survived as his widow. We believe that the trial court was correct when it found there was no ambiguity in the trust agreement on this phase of the case and refused to admit parol evidence to explain any alleged ambiguity. The mere fact that there is a difference between parties over the interpretation of an instrument does not of itself create an ambiguity.

[4] Another specification of error relates to the action of the trial court in awarding to the surviving children the income to which Lillian Brunton would have been entitled had she survived Harold J. Brunton as his widow. It is argued that the children take under the agreement only upon the death of Lillian Brunton, and that Lillian Brunton (now Mrs. Glessner) is still alive.

But, as already noted, Lillian Brunton did not survive Harold as his widow, and she has disclaimed any interest under the trust. The question presented to the trial court was whether, under these circumstances, the income should be held in suspense until the death of Lillian Brunton or paid to the beneficiaries next in line of succession. Under the equitable rule providing for acceleration of a more remote interest upon failure of a prior interest, the trial court, we believe properly, awarded the income to those who were next in line, i. e., the children of Harold. Restatement of Law—Property, p. 962, §231; *Ward v. Ward,* 153 Kan. 222, 109 P. (2d) 68; *Tomb v. Bardo,* 153 Kan. 766, 114 P. (2d) 320; *Bennett v. Fidelity Union Trust Co.,* 123 N.J. Eq. 198, 196 Atl. 375, 378.

2. The second point here involved was first presented to this court in *Brunton v. International Trust Co.,* 97 Colo. 49, 47 P. (2d) 394. In that case Carville Joseph Brunton, a minor and adopted child of John D. Brunton, brought suit to have himself declared the lawful issue of John D. Brunton, the latter being one of the four children of Katharine and David. The purpose of the action was to bring Carville within the clause, "the line of John D. Brunton * * * shall consist of and shall include the said John D. Brunton and his lawful issue of every degree." We directed that the suit, be dismissed, holding it to be premature in view of our holding in *Brunton v. International Trust Co.,* 90 Colo. 48, 6 P. (2d) 460, supra, where we construed the aforesaid clause defining the line of John D. Brunton together with the provision that "the lawful issue of every degree of each line shall take per stirpes and not per capita" to mean that "the progeny may not share concurrently with the progenitor." Therefore Carville could not possibly take anything under the trust unless and until his adoptive father, John D. Brunton, predeceased him. We said: "Courts are not constituted to render advisory opinions to private litigants, and will not ad-

judicate * * * issues framed upon facts which may never occur."

The contingency in that case that we said might never occur did, however, subsequently happen. John D. Brunton died survived by his adopted son, Carville. This was after the International Trust Company had already brought this proceeding asking for a construction on the first point involved in this case. Thereupon the company filed its amended complaint, setting forth the fact of John D. Brunton's death and that his adopted son, Carville, was claiming the same rights under the trust as if he were a child born of the marriage of John D. Brunton and his wife, Florentine, to which claim other beneficiaries were objecting. Inasmuch as the same question had simultaneously arisen in the administration of trust No. 3, the United States National Bank as trustee filed a complaint as intervener, asking for a simultaneous interpretation of its trust agreement in so far as it touched upon this question.

On this phase of the case the trial court found that the pertinent provisions of the two trust agreements were, "ambiguous and indefinite in reference to the right of Carville Joseph Brunton to participate in 'The Brunton Trust' and the 'Brunton Trust No. 3'; that the oral testimony taken in this case and the evidence adduced herein relating to the right of Carville Joseph Brunton to participate in the said 'The Brunton Trust' and the 'Brunton Trust No. 3,' and each thereof, as a beneficiary has been considered by the court only with respect to the interests, circumstances and relationships of the parties, and only where it tends to explain but not vary the terms of the respective trusts, and that in all other respects said oral testimony and said evidence has been rejected by the court as immaterial or irrelevant as the case may be." The court found that the said Carville Joseph Brunton should, and that it was the intention of the founders of both "The Brunton Trust" and the "Brunton Trust No. 3," that the said Carville

Joseph Brunton should share under the terms and provisions of both trusts, "and each thereof, as fully and completely as if the said Carville * * * was at the time of the founding of said" trusts, "and each thereof, a child born in lawful wedlock of the marriage and union of John D. Brunton, his adoptive father, and Florentine Monnig, the wife of John D. Brunton and mother of the said Carville Joseph Brunton."

The first question to be determined is whether the two instruments were ambiguous, so that in interpreting or construing them the introduction of parol evidence to explain any alleged ambiguity would be justified. In considering this question we are confronted with a general rule or presumption which has been given wide application in cases involving the interpretation or construction of wills and trusts involving the rights of adopted children. It is stated in the well known case of *Woodcock's Appeal,* 103 Me. 214, 68 Atl. 821: "Where one makes provision for his own 'child or children,' by that designation, he should be held to have included an adopted child, since he is under obligation in morals if not in law to make provision for such child." Citing *Virgin, Executor v. Marwick,* 97 Me. 578, 55 Atl. 520, and *Martin v. Aetna Life Ins. Co.,* 73 Me. 23. "When in a will provision is made for a 'child or children' of some other person than the testator, an adopted child is not included unless other language in the will makes it clear that he was intended to be included, which is not the case here. In making a devise over from his own children to their 'child or children' there is a presumption that the testator intended 'child or children' of his own blood, and did not intend his estate to go to a stranger to his blood. Blood relationship has always been recognized by the common law as a potent factor in testacy."

Counsel for Carville vigorously deny the applicability of this rule or presumption to the instant case because of the Colorado statute relating to adoption, from which

they quote the provision: that, "such child shall be to all intents and purposes the child of its adopted parents and legal heir of the person so adopting him" ('35 C.S.A., c. 4, §5.), arguing that because of the liberality of Colorado adoption laws a similar liberality should be indulged so as to include adopted children within the class of children of the blood, even where not specifically mentioned in trusts testamentary or inter vivos.

It has been pointed out that these adoption statutes apply to cases of intestacy and can not be invoked to upset the provisions of a will or trust instrument. Our adoption statutes, however, do not have the effect seemingly urged by counsel for Carville. We have recently held in *Rogers v. Green*, 111 Colo. 85, 137 P. (2d) 408, "Inheritance follows the blood and an adopted child inherits only from the adopting parent and not through it." In *Coffman v. Howell*, 111 Colo. 359, 141 P. (2d) 1017, we held, as stated in the syllabus: "Because a statute provides that the family of which an adopted child becomes a member shall inherit from him, it does not follow that the adopted child shall inherit from anyone save his adopting parents."

After studying the Colorado adoption statutes and the cases construing them, we conclude that there is no conflict between our adoption laws and the presumption relating to adopted children in wills and trusts heretofore mentioned; on the contrary, there is a harmony or parallelism between them. In the case of intestacy, we say an adopted child inherits from, but not through, its adoptive parents. In the case of its rights under a will or trust, we say there is a presumption in favor of the adopted child being included with children of the blood when the instrument is executed by its adoptive parent, but a presumption against it being entitled to take when the instrument is made by one other than the adoptive parent. These two presumptions relating to testate succession have wide acceptance in other jurisdictions. 70 A.L.R. 623, 144 A.L.R. 670. They would appear to be

sound, appropriate, and in fact to follow as an inevitable corollary our laws having to do with intestate succession of adopted children.

John D. Brunton, the adoptive father of Carville, although a benficiary under both trust agreements, is not a party to either. He is neither settlor, trustor, donor, nor founder. The presumption which would run in favor of Carville taking as a beneficiary had his father acted in any of those capacities, now runs against him because others than his father did so act.

The next question is whether there is anything in the two trust instruments to overcome this presumption, unfavorable to Carville. Those documents would appear to contain matters supporting the presumption, rather than rebutting it.

(a) An examination of the trust agreements shows that Carville's adoptive father, John D. Brunton, was one of the four members of the second generation of Bruntons. Carville, if he were to be brought within the family classification, would be of the third generation—the same as the grandchildren of David and Katharine. All of the grandchildren of David and Katharine living at the respective dates of execution of the two trust agreements are mentioned by name, but Carville's name appears nowhere in either instrument.

(b) In article IV, section 9, of the Brunton International Trust, in which appears the expression "if extinction of all lines should occur" (i. e. those of the four members of the second generation), there is a provision like that of article VI in the United States National Trust that, "if prior to the time fixed for the final distribution of the principal of the trust estate as aforesaid, all of the descendants of the donor shall be dead," then and in that event the trustee shall transfer and convey the property of the trust estate to the State School of Mines at Golden, or in the event it is not then in existence to the State University at Boulder. Under the theory of Carville's counsel, this contingent bequest

could be defeated by the simple expedient of adoption whenever it appeared that the family blood line was about to "die out." These paragraphs further confirm the presumption that the donors' use of the term "lawful issue," "descendants," and "lines," refer to the blood line, i. e., the heirs of the body.

(c) Article IV, section 8 (b) of the International Trust, similar in purport though not identical in wording to article V, section 10 (b) of the United States National Trust, reads as follows: "If any grandchild or other more remote lineal descendant of the said Frederic K. Brunton, John D. Brunton, Harold J. Brunton or Marion B. Shanklin shall die leaving no lawful issue living at his or her death, the share or shares which he or she was entitled to receive during his or her life shall be divided proportionately among and be added to the respective amounts payable under the terms thereof, to the other beneficiaries who are herein designated as such, by reason of descent from his or her deceased parent, or should there be no such others, then to those who are herein designated as beneficiaries by reason of descent from his or her deceased grandparent, or next nearest deceased common ancestor."

It would appear that the word "grandchildren" was restricted to the blood grandchildren of the four members of the second generation who are named in both trusts, just as "child" refers to the members of the third blood generation who are specifically named in each trust. The terms by "reason of descent" or "lineal descendants" have force and meaning, and are harmonious if applied to the blood line, but become contradictory if allowed to include an adopted person, because of the phrase "by reason of descent from his or her deceased grandparent or next nearest deceased common ancestor," *for the reason that Carville has no common ancestor with any of the other beneficiaries to the trust instruments, whether designated by name or by class.* For although in accordance with the statute he has be-

come the adopted son of John D., he has not thereby become the grandchild of David and Katharine. In the corresponding paragraph in the United States National Bank Trust there is a direction to distribute the principal "per stirpes and not per capita" to the *descendants of the donor*, Katharine, which is a class that excludes Carville and his children and succeeding generations and limits distribution to the blood line of Katharine.

(d) In the corresponding paragraphs in the two trusts relating to the appointment of a successor trustee, power is lodged in "the children of the founders or their lineal descendants" in the International Trust agreement, article VI, and in the "children of the donor and the descendants of the donor" in the United States National Trust, article XII, which again is consistent with the unrebutted presumption that the founders were providing for distribution to the blood line.

In addition to the matters affecting both trusts hereinabove discussed, there are the following items peculiar to the Brunton International Trust:

(1) That trust was of not nearly the importance to the John D. Brunton branch of the family as it was to the Harold J., Frederic K., and Marion B. Shanklin (subsequently Barker) branches. This can be seen from the fact that, (a) the duration was not based upon John D.'s life, as it was on the lives of his two brothers and sister; (b) John D.'s share of the income is insignificant (merely 3%) in comparison with that of the others; (c) no mention is made of John D. Brunton's wife (the mother of Carville); and (d) no provision is made for her either by name or by status.

(2) As we have seen in considering the first phase of this case, wherever provision is made for a person not related by blood, that type of beneficiary has always been specifically named—such as, Lillian Brunton, who would have been entitled to take had she survived as Harold J.'s widow; or Mrs. Frederic K. Brunton, the wife of Frederic K.

(3) If Carville were allowed to participate, he would become the only beneficiary living at the time of the execution of the trust whose name does not appear therein.

(4) He was not adopted at the time of the execution of the trust, and is therefore met with a second presumption negativing any intention of the settlors that he should be included as a beneficiary.

█ We therefore conclude, that as to the Brunton International Trust there was no ambiguity justifying the introduction of parol evidence on the question whether Carville was a beneficiary thereunder by reason of being an adopted child of John D.; that the general presumption against his taking is not overthrown by a consideration of the whole instrument; that on the contrary the various facts hitherto mentioned, all appearing within the four corners of the document, definitely confirm and corroborate the presumption that it was not intended that Carville should take under the trust.

There remains the question whether the same result obtains in respect to Brunton Trust No. 3 with the United States National Bank. The special factors listed under 1 to 4, as pertaining solely to the earlier trust, do not apply here. In Trust No. 3, John D. Brunton is included as one of the lives in being upon which the duration of the trust depends; his share of the income of the trust is somewhat larger; there is a provision for the spouses of the four children of David and Katharine if they survive as widow or widower, as the case may be, a provision made by status or description and not by name. Carville's mother, although not mentioned by name, would then become a beneficiary should she survive John D. as his widow. The most obvious difference is that Carville's adoption by John D. intervened between the execution of the earlier trust on July 1, 1923, and the later trust on August 29, 1927. Do these changes suggest an ambiguity which allows the intro-

duction of explanatory parol evidence? Our answer is in the negative, not merely because of the reasons heretofore advanced as applicable to both trusts, but because of the following additional matters that apply peculiarly to Trust No. 3.

(a) It has been noted that all of the members of the third generation of Bruntons in the blood line who were alive at the time of the execution of the two trusts were included and named specifically among the lives in being upon which the duration of the respective trusts was based. In the interval between the execution of the two trusts, one member of the third generation died, Beverly Brunton, child of Harold J. Her name, included in the earlier trust in article III, pertaining to its duration, is omitted in the corresponding article III in the later trust. If Katharine, the founder of the later trust, had looked upon Carville, who had in the meantime become the adopted son of John D., as entitled to all the rights and privileges of a grandchild of hers, it would have been natural for her to substitute Carville's name for that of the deceased Beverly—for according to the argument of counsel for Carville, upon his adoption he became "to all intents and purposes the child of" John D., and Katharine had thus lost a grandchild in Beverly and might have been supposed to have gained one in Carville. His name through these very facts becomes more conspicuous by its absence in the later trust than in the earlier one.

(b) The very fact that no basic change was made in the pertinent clauses relating to the beneficiaries who should take, is persuasive that no change was intended by reason of Carville's adoption. There is the same use of the words "lawful issue" in defining the lines of the four children of Katharine Brunton; the same use of the word "children" in designating the members of the third generation of Bruntons in article III, the duration clause, in relationship to their immediate progenitor in the second generation.

(c) In article III, dealing with the duration of the trust (Brunton Trust No. 3), the founder, Katharine, designated the members of the third generation not only as the children of their Brunton parents but also as her, the donor's, grandchildren, as will appear from the following excerpt: "The trust hereby created shall continue during the natural lives of the following named persons and until twenty-one years after the death of the last survivor thereof; namely, the donor, her husband David W. Brunton, her children, Frederic K. Brunton, John D. Brunton, Harold J. Brunton, and Marion Brunton Barker, and her grandchildren, Frederic K. Brunton, Jr., and Virginia Brunton (children of Frederic K. Brunton), Barbara Brunton and David W. Brunton II (children of Harold J. Brunton), Dickinson Brunton Barker and Terry Barker (children of Marion Brunton Barker), but no longer and in no event after the death of the donor and her said husband and all of her descendants." John D. is included as donor's son. Carville is not included as John D.'s son, nor as donor's grandson, and when the donor concludes the paragraph with the words, "and all her descendants," she has already by name indicated them as being her blood descendants.

The underlying purport of both trust instruments seems to be that of keeping the estate in the family line — the blood line — and not allowing it to become scattered and get into the hands of strangers to the blood. While the second instrument is more generous to the spouses of the four Brunton children, the bounty, is limited to a certain life income which subsequently reverts to the family line, and there is provision that where extinction occurs in one line of the family, such as that of John D. Brunton, then "such income shall be paid to the lines of Frederic K. Brunton, Harold J. Brunton and Marion Brunton Barker."

Counsel has stated that David William Brunton could easily have excluded Carville, had such been his desire, by simply providing that the gift over was to go to the

issue or children of the body of his sons and daughter. The converse can more properly be said, that had he wished to include Carville he could have specifically mentioned him in the first trust (for he was not even adopted at the time of its execution), and in the later trust he could at least have given him the same status as that of his own blood grandchildren. With two presumptions running against there being any intendment to include Carville in the first instrument, and with its contents supporting rather than rebutting those presumptions, and furthermore with one presumption running against Carville in the second instrument, and its wording coupled with the two extrinsic facts—Beverly's death and Carville's adoption (properly admitted in evidence)—even more strongly corroborating that presumption, we are of the opinion that there was no ambiguity justifying the admission of parol evidence to explain either instrument.

For the foregoing reasons we affirm the judgment of the trial court in respect to the first phase of this case denying the claim of Jessie T. Brunton to take as the widow of Harold J. Brunton, and we reverse its judgment on the second phase upholding the claim of Carville Brunton to take as the adopted son of John D. Brunton. It is so ordered.