IN THE MATTER OF THE TESTAMENTARY TRUST OF MAUDE W. MILLER. JOHN R. MILLER, A MINOR, BY ROBERT C. WALLACE, HIS GUARDIAN AD LITEM, PETITIONER AND APPELLANT, v. FIRST NATIONAL BANK AND TRUST COMPANY OF HELENA, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF MAUDE W. MILLER, DECEASED; JERRINE PATRECIA MILLER PATTON; AND MARY M. MILLER, PETITIONERS AND RESPONDENTS.

No. 9523.

Submitted December 2, 1957. Decided April 3, 1958.

323 Pac. (2d) 885.

Gunn, Rasch & Gunn, T. P. Patterson, H. J. Luxan, Jr., Helena, for appellant.

Weir, Gough & Matson, Helena, for respondent First National Bank and Trust Co., of Helena.

Sam C. Ford, Helena, for respondent Jerrine Patrecia Miller Patton.

MR. JUSTICE ANGSTMAN:

This appeal presents the sole question as to whether an adopted son is "issue" and as such entitled to a legacy passing by the will of testatrix to her son and his "issue." The trial court answered in the negative. This appeal by the adopted son followed.

The facts are these: Maude W. Miller left a will dated November 7, 1945, which after making specific bequests to desig-

nated persons, gave the residue in trust to her sons Thomas B. Miller and George Ross Miller and the First National Bank & Trust Company of Helena.

The trust in substance, and so far as this case is concerned, gave the power to invest the trust funds and to pay one-half of the income to Thomas B. Miller and other one-half to George Ross Miller until they arrived at the age of fifty years or sooner died. That if either should die before reaching fifty years of age leaving issue and wife then the son's share should be divided between such issue and wife.

Maude W. Miller died on February 21, 1946. On March 3, 1950, George Ross Miller and his wife adopted John R. Miller.

George Ross Miller died July 14, 1953, leaving his widow, Mary M. Miller, a daughter by a previous marriage, Jerrine Patrecia Miller Patton, and the adopted son, John R. Miller.

The word "issue" in its commonly accepted sense means "issue of the body, offspring, progeny, natural children, physically born or begotten by the person named as parent." In re Kay's Estate, 127 Mont. 172, 260 Pac. (2d) 391, 394, and cases therein cited. In that case the court quoted with approval from In re Howlett's Estate, 366 Pa. 293, 77 A. (2d) 390, 392, as follows: "An adopted child is issue of his natural parents and not of his adopted ones."

In 95 C. J. S. Wills, sec. 666, pp. 976, 982, it is said: "In the absence of testator's intention that an adopted child be included, such child will be excluded, since, generally, the term 'issue' is intended to refer to natural or blood relationships, or descendants.

"Also, in the absence of an intention to the contrary, the term 'issue' may not include a child adopted after the testator's death."

But counsel for appellant relying on the rule stated in In re Sheffer's Will, 139 Misc. 519, 249 N. Y. S. 102, contend that the will of testatrix must be construed in reference to the law existing when the will was made.

In reliance on sections 91-201, 91-202, 91-203, 91-211, 91-218 and 91-219, R. C. M. 1947, they contend that technical words are to be taken in their technical sense and reasoning thusly, their position is that since section 91-218 provides, in part, that a testamentary disposition to "issue," "without words of qualification, and when the terms are used as words of donation, and not of limitation, vests the property in those who would be entitled to succeed to the property of such person, according to the provisions of the chapter on succession," the conclusion follows that the bequest to the "issue" includes an adopted child.

Our adoption statutes affect the relationship of the child and its adoptive parents toward each other. Section 61-134, provides: "A child, when adopted, may take the family name of the person adopting. After adoption, the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation."

Under such a statute, an adopted child does not obtain the ■ status of a natural child as to relatives of the adoptive parent. 2 C. J. S. Adoption of Children, sec. 57, p. 448.

Estate of Pierce, 32 Cal. (2d) 265, 196 Pac. (2d) 1; In re Hayes' Estate, 161 Or. 1, 86 Pac. (2d) 424, 87 Pac. (2d) 766.

And in the absence of statute cannot inherit from the an- ■ cestors of the adoptive parents. 2 C. J. S. Adoption of Children, sec. 63, pp. 452, 455; 1 Am. Jur., Adoption of Children, sec. 63, p. 662; Estate of Warr, 111 Colo. 85, 137 Pac. (2d) .408; Estate of Pierce, supra; In re Harrington's Estate, 96 Utah 252, 85 Pac. (2d) 630, 120 A. L. R. 830.

Our succession statutes, referred to in section 91-218, are sections 91-401 et seq. They provide to whom the property of a decedent shall pass if he dies intestate.

Under section 61-134, an adopted child inherits from his ■ adoptive parent. In re Pepin's Estate, 53 Mont. 240, 163 Pac. 104.

But had Maude W. Miller died intestate the adopted child of her son, George Ross Miller, would not have been entitled to

share in the estate of Maude W. Miller under the rule of the above-cited cases and hence section 91-218, does not alter the general rule that "issue" does not include an adopted child when such adopted child seeks to inherit property not from, but through his adoptive parent.

All that is meant by section 91-218 is that when anyone makes a testamentary disposition of his property to the "issue" of his natural son, it is to be understood that by the word "issue" he meant only "those who would be entitled to succeed to the property of such person, according to the provisions of the chapter on succession." But this does not mean that where as here the property passed first to the son of testatrix with the remainder over to the issue of the former that the meaning of the word "issue" is controlled by section 91-218.

In fact section 91-219 greatly restricts the force of section 91-218. Section 91-219 provides:  .

"The terms mentioned in the last section are used as words of donation, and not of limitation, when the property is given to the person so designated directly, and not as a qualification of an estate given to the ancestor of such person."

Section 91-218 then has application only to a case where the donation is made by the testator directly to the person designated therein and does not apply to a case such as this where the bequest was given to the adoptive parent of such adopted child and where the latter is designated only as the issue of testatrix' son and particularly where, as here, the adoption did not take place until after the death of testatrix. In effect our statutes follow the rule recognized by courts generally.

Thus in Brunton v. International Trust Co., 114 Colo. 298, 164 Pac. (2d) 476, the Supreme Court of Colorado considered a trust much like the one before us here.

In that case Carville Brunton, the adopted child of John D. Brunton, claimed the same rights under a trust made by Kath-

arine and David Brunton, the parents of John D. Brunton, as if he were the lawful issue of John D. Brunton.

The lower court held that he had those rights, but the Supreme Court reversed saying: "In considering this question we are confronted with a general rule or presumption which has been given wide application in cases involving the interpretation or construction of wills and trusts involving the rights of adopted children. It is stated in the well known case of Woodcock's Appeal, 103 Me. 214, 68 A. 821, 822: 'Where one makes provision for his own "child or children," by that designation, he should be held to have included an adopted child, since he is under obligation in morals, if not in law, to make provision for such child.' Citing Virgin v. Marwick, 97 Me. 578, 55 A. 520, and Martin v. Aetna Life Ins. Co., 73 Me. 25. 'When in a will provision is made for a "child or children" of some other person than the testator, an adopted child is not included, unless other language in the will makes it clear that he was intended to be included, which is not the case here. In making a devise over from his own children to their "child or children," there is a presumption that the testator intended "child or children" of his own blood, and did not intend his estate to go to a stranger to his blood. Blood relationship has always been recognized by the common law as a potent factor in testacy.'

"Counsel for Carville vigorously deny the applicability of this rule or presumption to the instant case because of the Colorado statute relating to adoption, from which they quote the provision: That 'such child shall be to all intents and purposes the child (of its adopted parents) and legal heir of the person so adopting him.'" 35 C. S. A., c. 4, sec. 5, arguing that because of the liberality of Colorado adoption laws a similar liberality should be indulged so as to include adopted children within the class of children of the blood, even where not specifically mentioned in trusts testamentary or inter vivos.

"It has been pointed out that these adoption statutes apply to cases of intestacy and can not be invoked to upset the pro-

visions of a will or trust instrument. Our adoption statutes, however, do not have the effect seemingly urged by counsel for Carville. We have recently held in Rogers v. Green, 111 Colo. 85, 137 Pac. (2d) 408, 'Inheritance follows the blood and an adopted child inherits only from the adopting parent and not through it.' In Coffman v. Howell, 111 Colo. 359, 141 Pac. (2d) 1017, we held, as stated in the syllabus: 'Because a statute provides that the family of which an adopted child becomes a member shall inherit from him, it does not follow that the adopted child shall inherit from anyone save his adopting parents.'

"After studying the Colorado adoption statutes and the cases construing them, we conclude that there is no conflict between our adoption laws and the presumption relating to adopted children in wills and trusts heretofore mentioned; on the contrary, there is a harmony of parallelism between them. In the case of intestacy, we say an adopted child inherits from, but not through, its adoptive parents. In the case of its rights under a will or trust, we say there is a presumption in favor of the adopted child being included with children of the blood when the instrument is executed by its adoptive parent, but a presumption against it being entitled to take when the instrument is made by one other than the adoptive parent. These two presumptions relating to testate succession have wide acceptance in other jurisdictions. 70 A. L. R. 623; Comer v. Comer, 195 Ga. 79, 23 S. E. (2d) 420, 144 A. L. R. [664], 670. They would appear to be sound, appropriate, and in fact to follow as an inevitable corollary our laws having to do with intestate succession of adopted children.

"John D. Brunton, the adoptive father of Carville, although a beneficiary under both trust agreements, is not a party to either. He is neither settlor, trustor, donor, nor founder. The presumption which would run in favor of Carville taking as a beneficiary had his father acted in any of those capacities, now runs against him because others than his father did so act."

The Supreme Court of California has held that adopted children inherit from, but not through, their adoptive parents. Estate of Darling, 173 Cal. 221, 159 Pac. 606; Estate of Calhoun, 44 Cal. (2d) 378, 282 Pac. (2d) 880. The reason for that rule is that the foster parents should not be permitted to fasten the adopted child for inheritance purposes upon his relatives. In re Brenner's Estate, 149 Misc. 412, 267 N. Y. S. 765, and In re Ashurst's Estate, 133 Pa. Super. 526, 3 A. (2d) 218. In 1955 California amended the statute, section 257 of the Probate Code, so that it now reads in part: "An adopted child shall be deemed a descendent of one who has adopted him, the same as a natural child, for all purposes of succession by, from or through the adopting parent the same as a natural parent."

Under the amended statute the Supreme Court of California has held that an adopted child, adopted after the will was made and after the testatrix died, came within the term "lawful issue" as used in a will. In re Heard's Estate, Cal. 1957, 319 Pac. (2d) 637; and compare, So. Cal. L. Rev., Vol. 29, p. 126.

Under a statutory provision reading: "By virtue of such adoption, he shall inherit from his adopting parents or their relatives the same as though he were the legitimate child of said parents," M. S. A., sec. 259.07, the Supreme Court of Minnesota held that the word "issue" included an adopted child in a will creating a trust in the case of In re Trust under Will of Holden, 207 Minn. 211, 291 N. W. 104, 107.

Our statute does not give to the adopted child the right to inherit from anyone save the adoptive parents as does that of Minnesota and the recent California statute except that he still may inherit from and through his blood relatives. In re Kay's Estate, supra.

Appellant contends that the bequest here is made direct to the "issue" within the meaning of section 91-219, and hence is not ruled by the last line of that section. Assuming that to be the case, appellant's position is no better because under section 91-218, the adopted child would not be entitled to succeed to the

362

property of Maude W. Miller, the testatrix here, according to the provisions of the chapter on succession, had she died without leaving a will.

It follows that the trial court was right in ruling that appellant is not entitled to inherit any part of the estate of Maude W. Miller.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and ADAIR and the HONORABLE E. B. FOOT, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.