NORMAN J. HOLTER, EXECUTOR OF THE WILL OF NORMAN B. HOLTER, DECEASED, AND TRUSTEE OF THE CLARA HOLTER KENNET TRUST, PLAINTIFF AND RESPONDENT, *v.* FIRST NATIONAL BANK & TRUST COMPANY OF HELENA, AS GUARDIAN OF PERSON AND ESTATE OF JAMES ANTON BARBOUR; JAMES ANTON BARBOUR, A MINOR, DEFENDANTS AND RESPONDENTS. PHILLIP JEFFERIS BARBOUR, A MINOR, DEFENDANT AND APPELLANT.

No. 9979.
Submitted on Briefs. Decided March 18, 1959.
336 Pac. (2d) 701.

28

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES, dissented.

Robert L. Word, Jr., Helena, for appellant.

Weir, Gough, Burke & Booth, John H. Risken, Wesley W. Wertz, Helena, for respondents.

MR. JUSTICE ANGSTMAN:

This appeal by Phillip Jeffries Barbour, a minor, is taken from a judgment declaring that he must divide equally with the respondent, James Anton Barbour, also a minor, the interest of their deceased mother in the Clara Holter Kennett Trust. Both boys appear by guardians ad litem. The problem in the case is the proper interpretation of a trust deed and arises out of the use therein of the word "issue" and the fact that James is an adopted child.

The allegations of the complaint are admitted; no factual questions arise. The sole question is whether James, the adopted son, is entitled to a share in the distribution of the trust property under the terms of the trust deed.

The trust in question was established October 7, 1929, and it provided that the trust property be transferred upon the death of the survivor of the trustor and the two named trustees, brothers of the trustor "to such among the children of said Norman B. Holter and Aubrey M. Holter, respectively, as may be living at the death of first party hereto, and to the issue of any such child of either said Norman B. Holter and Aubrey M. Holter who may have died before first party hereto leaving issue him or her surviving, such issue to take per stirpes the share of the parent and not per capita."

Marian Holter, a niece of the trustor, married in 1931, becoming Marian Holter Barbour. In 1938 she adopted James, and in 1939 she bore Phillip. She died in 1946, survived by these two boys who are the parties represented in the present action. The trustor died in 1951, the surviving trustee died in 1957, and the trust was then ready for distribution.

Subsequent to the making of the trust agreement, in 1941 Clara Holter Kennet made her last will and in the residuary clause left the remainder of her estate to the children of her brothers "and to the issue of any of said nieces and nephews of mine who may die before my death, leaving issue him or her surviving, such issue to take per stirpes the share of the parent, and not per capita. *It is my will that wherever I have used the term "issue" herein in contemplation of the child or children of my niece or nephew or descendants of theirs, such term shall include the lawfully adopted child or children of any such niece or nephew of mine or of his or her descendants."* Emphasis added.

The admitted allegations of the complaint, the will and the trust deed which were made exhibits thereto, constitute the record presented to the district court. Upon this record that court decreed:

"That both James Anton Barbour and Phillip Jeffries Barbour shall be considered within the meaning of the term 'issue' as used in the trust agreement dated October 7, 1929, and therefore the remaining property of the trust created thereby insofar as said James Anton Barbour and Phillip Jefferis Barbour are concerned shall be transferred one-twelfth (1/12) to James Anton Barbour and one-twelfth (1/12) to Phillip Jefferis Barbour free of the trust created by said trust agreement."

In it search for the meaning of this trust deed, as with any ▉ document, this court is limited to the language of the deed as illuminated by the circumstances surrounding its execution, unless we find it ambiguous or uncertain. R.C.M. 1947, secs. 93-401-13, 93-401-14, 93-401-15, 93-401-16, 93-401-17, 93-401-18.

This court has held that the word "issue" in its commonly ▉ accepted sense means issue of the body and not an adopted child. In re Kay's Estate, 127 Mont. 172, 260 Pac. (2d) 391; In re Miller's Trust, 133 Mont. 354, 1958, 323 Pac. (2d) 885. This is the rule elsewhere. Thus in Fidelity Union Trust Co. v. Potter, 8 N. J. Super. 533, 539, 73 A. (2d) 625, 628, the court said:

"The donor limited the distribution of the trust fund among his daughters' 'issue.' Generally, the word 'issue' does not include an adopted child. The question, however, is essentially one of intention, which may be gathered from a construction of the entire instrument and an examination of the surrounding circumstances."

In the Miller case we followed the rule stated in Brunton v. ▉ International Trust Co., 114 Colo. 298, 164 Pac. (2d) 472, 477, where the court, in part, stated: "In the case of its rights under a will or trust, we say there is a presumption in favor of the adopted child being included with children of the blood when the instrument is executed by its adoptive parent, but a presumption against it being entitled to take when the instrument is made by one other than the adoptive parent."

The presumption alluded to is a rebuttable one. It is apparent that the time when the beneficiaries of the trust, in question here, must be ascertained is at the death of the survivor of the

trustor and trustees. Here that date was 1957 when the last trustee died.

. When the trust was created in 1929, Marian Holter was not yet married. The adoption did not take place until in 1939 which was seven years after her marriage in 1931. At the time of the adoption she had not yet given birth to her natural son.

Hence when the trust was created Marian Holter had no children, either natural or adopted.

Respondents contend that the presumption above alluded to is overcome by evidence to the contrary. This contention must be sustained.

Under section 93-401-13 evidence of the circumstances under which the trust was made may be shown to explain ambiguities therein.

But appellant takes the position that the trust is clear and unambiguous and hence that there is no room for extrinsic evidence to show what was intended.

It is our view that the trust agreement is ambiguous and subject to explanation by parol.

Before this court settled the question in the Kay and Miller cases, supra, there was doubt as to whether the word "issue" included an adopted child. The Kay case was decided in 1953 and the Miller case in 1957. The fact that a good argument could have been made on either side of the question, before these cases were decided, was sufficient to show that the term carried with it an ambiguity. Little Rock Junior College v. George W. Donaghey Foundation, 224 Ark. 895, 277 S. W. (2d) 79, 82, 51 A.L.R. (2d) 806.

Likewise in the answer of appellant he sought judgment granting relief from all uncertainty. This implies that he and others thought there was uncertainty in the language employed. As said in the Little Rock Junior College case, supra, "Where there is an ambiguity in a deed, extrinsic evidence is admissible, not to contradict or vary the terms of the deed, but to place all the facts, circumstances, and position of the parties before the

32

court to the end that the true intent of the grantor may be determined.''

Again in that case, the court said : ''The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them.''

Here it is a fair inference from the language used in the will ██ that the testatrix had developed an affection for the adopted son of Marian Holter. she had the same regard for the adopted son as for her natural son and in her mind the word ''issue'' when applied to those who should share in her property included the adopted as well as the natural son of Marian Holter. To all intents and purposes the trustor stood in the same relationship to the adopted son of Marian Holter as to the natural son just as did the adoptive mother by virtue of section 61-134. And it would be preposterous to say that the trustor meant to include the adopted son of Marian Holter as ''issue'' in the will but not as ''issue'' under the trust.

Nor is there any merit in the contention of respondents that ██ subsequent declarations of the trustor are not relevant to show the meaning of the word ''issue.'' Compare In re Nicol's Trust, 3 Misc. (2d) 898, 148 N.Y.S. (2d) 854.

Accordingly the judgment is affirmed.

MR. JUSTICES ADAIR and BOTTOMLY concur.

MR. CHIEF JUSTICE HARRISON:

I dissent.

I do not believe that the trust deed speaks as of the time of the death of the surviving trustee. This trust deed was neither revocable nor amendable, it conveyed legal ownership of the corpus to the trustees, and at the time it was executed and delivered the transaction was complete and beyond the trustor's power to recall. Bogert, Trusts & Trustees, secs. 41, 42, pp. 270, 271.

I believe the intention of the trustor which must be determined here is that intention which she had in 1929, the time the deed was executed. Smyth v. McKissick, 222 N. C. 644, 24 S. E. (2d) 621, 628; Trowbridge v. First-Stamford Nat. Bank & Trust Co., 182 Misc. 180, 44 N.Y.S. (2d) 43; Brock v. Hall, 33 Cal. (2d) 885, 206 Pac. (2d) 360, 11 A.L.R. (2d) 672; In re Nicol's Trust, 3 Misc. (2d) 898, 148 N.Y.S. (2d) 854; Barnes v. Illinois National Bank & Trust Co., 326 Ill. App. 687, 63 N. E. (2d) 264; 90 C.J.S. Trusts, sec. 161a. ''The rules of construction are well settled. The intention of the grantor is that intent revealed by the words used in the trust instrument and not his secret wishes, desires or *thoughts after the event.*'' Emphasis added. City Bank Farmers Trust Co. v. Macfadden, Sup., 65 N.Y.S. (2d) 395, 397.

In my opinion the scope of the class of beneficiaries was established once and for all in 1929, and the only thing to be done at the date of the death of the surviving trustee was to determine who then came within the class described by the language of the deed. Smyth v. McKissick, supra. ''* * * the eventualities must be adapted to the terms of the trust, not the trust to the events.'' Hills v. Travelers Bank & Trust Co., 125 Conn. 640, 7 A. (2d) 652, 655, 123 A.L.R. 1419. ''It is a rule of equity that once a trust is created it is thereafter to be treated as a trust. *A trust deed takes effect when it is made, and the construction that would be given to it at that time holds true throughout the life of the instrument.* An inter vivos trust speaks as of the day of its execution and delivery.'' Emphasis added. 90 C.J.S. Trusts, sec. 161a, p. 16.

Evidence is required to overcome any presumption and to overcome the presumption against the inclusion of adopted children within the meaning of the word ''issue,'' it appears to me that some affirmative evidence must be produced to show that the trustor intended to include possible future adopted children as members of the class of beneficiaries. As the majority opinion states, this court is limited when searching for this intent.

to the language of the deed as illuminated by the circumstances surrounding its execution unless it finds the deed ambiguous.

To me, none of the "surrounding circumstances" presented by the record indicate any reason to think that the possibility of adopted children was considered when the trust deed was drafted, executed and delivered. In 1929, when this trust deed was made, Marian Holter had not yet married. The adoption did not take place until 1938, seven years after her marriage in 1931. The record does not indicate that there were adopted children anywhere in the trustor's family in 1929.

In the absence of evidence to the contrary, I think we must assume that the word "issue" was used in its primary and generally accepted sense. R.C.M. 1947, sec. 93-401-18. Two recent cases in this court have decided beyond a doubt that the word "issue" as commonly accepted does not include adopted children. In re Kay's Estate, 127 Mont. 172, 260 Pac. (2d) 391; In re Miller's Trust, 133 Mont. 354, 1958, 323 Pac. (2d) 885. These cases defined the word as it existed *prior* to the time the opinions were written and are in accord with the vast majority of reported cases, some very old. They did not establish a prospective rule only, for that would be legislation. In the face of the Kay case and the Miller case, I cannot concur with the majority's statement that the use of the word "issue" makes the deed ambiguous.

It is my thought therefore that extrinsic evidence such as the will should not be considered.

But even if the will is considered, the respondent's position is no better. The passage of twelve years between the execution of these documents, the intervening facts of Marian's marriage and subsequent adoption of a child, in my opinion, all militate against assigning probative value to the will so far as events which took place in 1929 are concerned. The will shows the trustor's sentiments in 1941, three years after the adoption, but it does not indicate what she thought in 1929.

In addition, the definition contained in the will states that adopted children are included within the meaning of the word

" 'issue' *herein.*" Emphasis added. It would seem that in order to apply this definition to the trust deed the majority must find that at the time the will was drafted the limiting word "herein" was intended to include the trust deed as well as the will of which it was a part. I cannot subscribe to such a finding.

MR. JUSTICE CASTLES:

I concur in the foregoing dissent of Mr. Chief Justice Harrison.