[No. 37942.   Department Two.   December 2, 1965.]

EDITH M. RIGG, *Appellant*, v. AMELIA RIGG LAWYER *et al.*, *Appellants*, ROGER PHILLIP WILLIAMS *et al.*, *Respondents.**

*Witherspoon, Kelley, Davenport & Toole*, for appellants Rigg and Lawyer.

*MacGillivray, Jones, Clarke & Schiffner*, by *W. Kenneth Jones*, for appellant Jones.

*Jerome Williams* and *Cashatt, Williams, Connelly & Rekofke*, for respondents.

*Reported in 408 P.2d 252.

HILL, J.—This is a declaratory judgment action by the only surviving trustee, under a trust deed, asking for instructions as to the present distribution of the trust income and the ultimate distribution of the principal of the trust.[1] All living beneficiaries of both the income and the principal of the trust are joined.

Our major problem has to do with the construction of the trust deed executed by George C. Beck, July 16, 1915, conveying an apartment-house property in trust to two of his daughters for the benefit of all three of his daughters during their lifetime. Whether it was then intended to be distributed to their children only, or their issue, is the question before us.

The following genealogical and explanatory chart will be helpful:

George C. Beck
(Executed the trust document and a will
July 16, 1915.)

| Bessie B. Roberts (Died without issue, in 1934.) | Edith M. Rigg (One of the original trustees, and now the sole surviving trustee; the plaintiff in the action, appellant here.) | Mayme E. Rigg (One of the original trustees; died July, 1958.) |
|---|---|---|
| | Amelia Rigg Lawyer (Living; no children; defendant in the action who takes the same position as her mother. Potentially, sole owner of corpus of trust, if her position is upheld.) | Marian Rigg Foley (formerly Williams) (Died February 14, 1963. Executor of her estate, Kenneth Jones, is a respondent to portions of the decree and an appellant as to others.) |

[1] See *Seattle-First Nat'l Bank v. Crosby*, 42 Wn.2d 234, 246, 254 P.2d 732 (1953), for authority to deal with the question of ultimate distribution.

&#xFE19;

*Roger Phillip Williams*
(Living; defendant and
respondent.)

&#xFE19;

*Marc Alan Williams*
*Camilla Jean Williams*
*Cari Lynn Williams*
*Guy Phillip Williams*
(All living; defendants
and respondents.)

During the lifetime of the oldest daughter, Bessie Roberts, the income from the trust property was divided equally between Beck's three daughters; and after her death, without issue, it was divided equally between the remaining two daughters, Mayme and Edith M. Rigg, the named trustees. (They had married brothers, which accounts for the similarity of names.) After the death of Mayme Rigg the income was divided between Edith M. Rigg and Marian Rigg Foley (Mayme Rigg's only child), except for the accumulation of a cash reserve hereinafter discussed. After the death of Marian Rigg Foley (February 14, 1963), Edith M. Rigg refused to make any payments to the only child of Marian Rigg Foley, Roger Phillip Williams (a son by a former husband), taking the position that he (and, of course, his children) had no interest in either the income from the trust property or in the property itself. This action was brought by the surviving trustee for a construction of the trust.

The primary controversy is between Edith M. Rigg, the surviving trustee (and her daughter, Amelia Rigg Lawyer), and Roger Phillip Williams (and his children). Other issues are incidental only and will be discussed later.

The paragraph in the trust deed around which controversy centers, is as follows:

> The parties of the second part herein to pay the net income thereof to my daughters, Bessie B. Roberts, Mayme E. Rigg and Edith M. Rigg, share and share

alike, at quarterly intervals, after deducting all charges, expenses and reasonable compensation for the care of the property, said net income to go to my said daughters share and share alike during their lifetime *and after their death* the *principal* of said trust fund then in the hands of said trustees, or their successors, *shall be divided per stirpes* and *not per capita* among the CHILDREN then living of my said daughters; and in the event of the death of any of my said daughters leaving issue that then the share going to said deceased daughter shall go *to her issue* and to be divided equally *among her issue* but in case said daughter shall die *without issue,* then said *income* shall be divided among my surviving daughters, share and share alike. (Italics and capitals ours.)

It is the contention of the surviving daughter and trustee, Edith M. Rigg, that both her sisters being dead and there being no *child* or *children* of said sisters living, she is the only one entitled to the net income of the estate; and that, upon her death, the entire trust estate should pass to her daughter, Amelia Rigg Lawyer (assuming she survives Edith M. Rigg).

It was the trial court's conclusion that participation in the trust property was not limited to the daughters of the settlor and their children, but to the settlor's daughters and *their issue.* And the trial court directed: That current income be distributed one-half to Edith M. Rigg and one-half to Roger Phillip Williams; and, upon the death of Mrs. Rigg, the principal of the trust should then vest in the surviving issue of the settlor per stirpes. (This disposition covers all contingencies relative to whether Amelia Rigg Lawyer or Roger Phillip Williams, either or both or neither, shall survive Edith M. Rigg.)

In arriving at its conclusion—that George C. Beck intended the issue of his daughters to share in the trust, and not just their children—the trial court took into consideration the will executed by Mr. Beck on the very same day that he executed the trust deed. The will made the same three daughters beneficiaries of a trust, and we quote two paragraphs of that will.

(b)
    In the event of the death of any of my said daughters

prior or subsequent to my decease, *leaving issue of her body surviving*, then the share or portion of the net rents, income and profits of said trust property to which such deceased daughter would have been entitled had she survived shall be paid over *to such issue*, share and share alike, in the same manner and at the same times as it would have been to such deceased daughter had she survived, but in the event there is *no such issue surviving* of such deceased daughter then the share or portion of the net rents, income and profits to which such deceased daughter would have been entitled had she survived shall be divided equally among her surviving sisters *or their issue*, in which last mentioned event the division shall be per stirpes and not per capita.

(e)

*Upon the death of the last surviving daughter, all of said trust property shall immediately vest in the surviving issue of my respective daughters, share and share alike, per stirpes, however, and not per capita.* (Italics ours.)

As the trial court points out, we have two instruments executed the same day for the same purpose, *i.e.*, the dividing of the income from trust property among his three daughters during their lifetime, and, after the death of the last survivor, disposing of the trust property to their issue per stirpes and not per capita.

The trial court said that such an intent is inescapable "especially when the will is read in conjunction with or in aid of the interpretation of the trust document."

It is urged that the trial court erred in considering the will, and that the trust deed must be construed standing alone.

However, the trial court was confronted with the determination of the intent of the settlor where there was ambiguity and uncertainty arising from the use of the capitalized word "children" in the paragraph heretofore quoted. It seemed to the trial court that the settlor could not have meant "children," in the ordinary sense of the word, because of the use several times in that same paragraph of the word "issue." There was certainly an ambiguity and uncertainty as to the intent of the settlor which

warranted the consideration by the trial court of extrinsic evidence, *i.e.*, the will executed by the settlor on the same day. This resolved the ambiguity, and removed the uncertainty in the mind of the trial court (and in ours) as to the intent of the settlor.

Support for the trial court's action is found in *Fowler v. Lanpher*, 193 Wash. 308, 75 P.2d 132 (1938). There a trust deed and will were executed within two days of each other. It is true, as appellants urge, that the deed was referred to in the will in that case; but the issue there, as in the case at bar, was not whether there was an incorporation by reference of the trust instrument into the will, but rather whether the two instruments—when read together—manifested one general intent. Here, as there, the two instruments are sufficiently contemporaneous in execution and similar in provisions to permit the conclusion that the settlor had in mind, with regard to both instruments, the accomplishment of a consistent specific purpose.

■ Our holdings in the *Fowler* case and in the present case are in accord with the rule laid down in Restatement (Second), Trusts § 4 comment d, and § 164 comment e on clause (a), *i.e.*, that if a trust is created by a transaction inter vivos and is evidenced by a written instrument, the terms of the trust are determined by the provisions of the instrument as interpreted in the light of all the circumstances and such other evidence of the intention of the settlor, with respect to the trust, as is not inadmissible because of the statute of frauds, the parol evidence rule, or some other rule of law.

Carrying the admissibility of extrinsic evidence to clarify ambiguities and to remove uncertainties in trust instruments much further than we need to (or are prepared to go at this time) are the cases of: *Little Rock Junior College v. George W. Donaghey Foundation*, 224 Ark. 895, 277 S.W.2d 79, 51 A.L.R.2d 806 (1955), and *Holter v. First Nat'l Bank & Trust Co. of Helena*, 135 Mont. 27, 336 P.2d 701 (1959).

■ It is also the contention of the appellant-trustee that, by the decision in *Old Nat'l Bank & Union Trust Co.*

*of Spokane v. Hughes,* 16 Wn.2d 584, 134 P.2d 63 (1943), we are committed to the proposition that the word "child" or "children" in a will or trust instrument circumscribes the later use of the word "issue" appearing in the same instrument. Other jurisdictions have reached a different conclusion.[2] However, the applicability of the rule in that case depends upon the testator having intended to use the word "children" with its ordinary connotation. Here, the trial court has found that the settlor did not intend to so use the word "children," but rather as including grandchildren and other lineal descendants of more remote degree. Since his intent is best expressed by the word "issue," the *Hughes* case has no application.

Turning now to lesser issues:

A. The appellant, Edith M. Rigg, urges that a cash reserve fund in excess of $19,000, built up out of undistributed income, should be declared a part of the corpus of the trust and not distributable as income. This is where the executor of the estate of Marian Rigg Foley, deceased, comes into the picture, because if this reserve fund is properly distributable as income, Marian Rigg Foley's estate would be entitled to her half of the trust income which was diverted into the reserve fund during her lifetime.

No authority for establishing such a reserve is found in the trust deed. The trustees had full power to mortgage or borrow. The income of a beneficiary for life is usually not required to suffer a deduction for the creation of a reserve fund for the benefit of a remainderman. *Chapin v. Collard,* 29 Wn.2d 788, 189 P.2d 642 (1948); *Laflin v. Commissioner of Internal Revenue,* 69 F.2d 460 (1934); *McCracken v. Gulick,* 92 N. J. Eq. 214, 112 Atl. 317 (1920).

The record does not support the contention that there was a family agreement concerning this reserve. At best, there was a mere acquiescence in the creation and accumulation of the reserve. We agree with the trial court that

[2]*In re Works' Estate,* 168 Kan. 539, 213 P.2d 998 (1950); *Tucker v. Tucker,* 259 Ky. 361, 82 S.W.2d 458 (1935); *In re Walker's Estate,* 240 Pa. 1, 87 Atl. 281 (1913).

after the payment of certain expenses the so-called cash reserve fund should be distributed as income.

B. The appellant, Edith M. Rigg, contends that the amount of a promissory note executed by Mayme Rigg and her husband, Archibald Rigg, should be set off against any share of the income to be received by the estate of Marian Rigg Foley out of the cash reserve referred to in A., which had been withheld from Marian Rigg Foley during her lifetime.

■ Although the Dead Man's Statute[3] was interposed as an objection to the admissibility of the note, it is not necessary to consider the niceties and refinements of the argument advanced to the effect that there has been a waiver of the statute. The records shows that no creditor's claim, based on this note, was presented to the administratrix W.W.A. of the estate of Mayme Rigg or to the executrix of the estate of her husband, Archibald Rigg. The non-claim statute is mandatory, and the failure to file a claim is an effective bar to any attempt to collect the note. *King Cy. v. Estate of Knapp*, 56 Wn.2d 558, 354 P.2d 389 (1960).

An argument is advanced that though the note cannot be enforced as a legal obligation, it is nevertheless an equitable obligation. It would seem to us that the equities are the other way and that to now allow the note as a setoff against the estate of Marian Rigg Foley, who was in no way a party to any transaction between Edith M. Rigg and Mayme Rigg, lacks any semblance of equity.

[3]"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise, but such interest may be shown to affect his credibility: *Provided, however,* That in an action or proceeding where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteeen years, then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person, or by any such minor under the age of fourteen years: *Provided further,* That this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and have no other or further interest in the action." RCW 5.60.030.

C. The appellant-executor urges that upon the death of Mayme Rigg in July, 1958, an undivided half interest in the property of the trust then vested in her daughter, Marian Rigg Foley, though the latter's actual possession of said property would be postponed until the death of Edith M. Rigg.

It is urged that this vested interest should be part of the estate of Marian Rigg Foley, and be distributable under the terms of her will. It is the executor-appellant's position that the words "after *their death*," in the eighth line of the paragraph of the trust deed heretofore quoted, should be read and interpreted to mean that on the death of each daughter of the settlor there would be an immediate vesting of that daughter's share of the trust in her issue per stirpes.

The argument is ingenious, but not convincing. If the language used can be said to be ambiguous, the same rule heretofore stated relative to the use of extrinsic evidence to discover the intent of the settlor would apply. We quote again a paragraph from the contemporaneous will of the settlor:

> *Upon the death of the last surviving daughter*, all of said trust property shall immediately vest in the surviving issue of my respective daughters, share and share alike, per stirpes, however, and not per capita.

This supports and confirms the interpretation of the trial court that the words "after their death" in the trust deed mean after the death of all of the daughters, and not after the death of each daughter.

The executor-appellant's somewhat startling interpretation of the trust deed urges various rules of construction, applicable where there is nothing available to evidence the intent except the document itself. We have no quarrel with these rules or their applicability in appropriate cases. We are not relegated to such rules in the instant case; the

contemporaneous will leaves us with no doubt as to the settlor's intentions in his trust deed.

The judgment of the trial court is, in all respects, affirmed.

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.